OPINION
{¶ 1} Michael J. Faul appeals from his conviction and sentence in Montgomery County Common Pleas Court on one count of felony driving under the influence of alcohol.[1]
 {¶ 2} Faul advances three assignments of error on appeal. First, he contends the trial court erred in failing to suppress the results of field sobriety tests that were not administered in strict compliance with standardized testing procedures. Second, he claims the trial court erred in failing to suppress evidence of field sobriety tests not recognized by the National Highway Traffic Safety Administration ("NHTSA"). Third, he argues that the trial court erred by ruling that a videotape of his performance on the field sobriety tests could be shown to jurors and that the arresting officer could testify about his observations during the sobriety tests.
 {¶ 3} For the reasons set forth below, we find no merit in the foregoing arguments. Accordingly, we will affirm the judgment of the Montgomery County Common Pleas Court.
 I. Factual and Procedural Background {¶ 4} Centerville police officer William Cole observed a car in a Jiffy Lube parking lot in the early morning hours of July 10, 2003. Cole watched as the vehicle proceeded in reverse before going forward, driving over several curbs, and coming within feet of striking the building. Cole followed the vehicle as it exited the Jiffy Lube parking lot and proceeded into an adjacent lot where he initiated a traffic stop. As Cole approached the vehicle, Faul rolled down the driver's side window. Cole immediately detected the odor of beer emanating from the vehicle. The officer also noted that Faul's speech was slurred.
 {¶ 5} While speaking with Cole, Faul agreed to undergo field sobriety tests. With assistance from another officer who had arrived on the scene, Cole had Faul perform five tests. The first test required Faul to recite the alphabet. The second test evaluated his finger dexterity. The third test involved Faul standing with his head back and his eyes closed for thirty seconds. The fourth test required Faul to touch his nose with his head back and his eyes closed. The fifth test involved Faul walking nine steps heel-to-toe then pivoting and returning. After the fifth test, Faul refused to submit to a horizontal gaze nystagmus test. At that point, Cole arrested him for driving under the influence of alcohol.
 {¶ 6} A grand jury subsequently indicted Faul on one count of felony driving under the influence of alcohol in violation of R.C. § 4511.19(A)(1). Faul then moved to suppress evidence of the field sobriety tests, including any observations and opinions of the officers who administered the tests. Following an evidentiary hearing, the trial court sustained Faul's motion in part and overruled it in part. With regard to the field-sobriety tests, the trial court divided them into categories including (1) those mandated or suggested by NHTSA and (2) those approved only by the Centerville Police Department. The trial court then reasoned:
 {¶ 7} "The NHTSA mandated or suggested field tests that were administered were the walk and turn test, the alphabet test and the finger dexterity test. Officer Cole testified to the NHTSA test standards regarding each test and that Mr. Faul's testing conformed to these standards. Further, the videotape of Officer Cole's encounter with Mr. Faul was introduced, and the videotape confirms that the tests were conducted in at least substantial compliance with the NHTSA standards. Therefore, Officer Cole, at trial, will be allowed to testify concerning these test results. Further, the jury will be allowed to observe Mr. Faul's test performance as captured by the videotape.
 {¶ 8} "A different conclusion is reached regarding the two Centerville tests that are not sanctioned by NHTSA. The State produced no evidence concerning whether either the one-leg balance test or the finger to nose test are standardized, reliable, and generally accepted field sobriety tests. Therefore, Officer Cole may neither testify concerning the Centerville test results nor to his observations of Mr. Faul while the Centerville tests were being conducted. Further, the jury will not be shown the portion of the videotape depicting the Centerville tests."[2] Doc. #23 at 5.
 {¶ 9} The trial court then concluded that Cole had probable cause to arrest Faul for driving under the influence of alcohol based on "Mr. Faul's driving observed by Officer Cole in the Jiffy Lube parking lot, the strong odor of an alcoholic beverage noted by Officer Cole, Mr. Faul's slurred speech, and Mr. Faul's compromised performance of the NHTSA approved field sobriety tests." Id.
 {¶ 10} Following the trial court's ruling on the motion to suppress, Faul entered a no-contest plea to the charge against him. The trial court accepted the plea, entered a judgment of conviction, and sentenced Faul to sixty days in jail. The trial court stayed execution of Faul's sentence pending our resolution of his appeal.
 II. Analysis {¶ 11} In his first assignment of error, Faul contends the trial court erred in failing to suppress the results of field sobriety tests that were not administered in strict compliance with standardized testing procedures. This argument concerns the results of the alphabet test, the walk-and-turn test, and the finger-dexterity test — all of which the trial court found to be admissible based on Cole's "at least substantial compliance with the NHTSA standards."
 {¶ 12} Faul claims the trial court's ruling is erroneous because substantial compliance with NHTSA standards is insufficient for sobriety test results to be admissible. He relies on State v. Homan (2000), 89 Ohio St.3d 421, in which the Ohio Supreme Court held that strict compliance with the applicable testing standards is required.
 {¶ 13} In response, the State insists that Homan no longer controls in light of the Ohio legislature's recent amendment to R.C. § 4511.19. Specifically, the State cites R.C. §4511.19((D)(4)(b), which provides:
 {¶ 14} "* * * * [I]f a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 15} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 16} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 17} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
 {¶ 18} The Ohio Supreme Court has recognized that under the foregoing statute "the arresting officer no longer needs to have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial. Instead, an officer now may testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards." State v. Schmitt, 101 Ohio St.3d 79,82, 2004-Ohio-37.
 {¶ 19} While Faul does not dispute that his field sobriety test results would be admissible under the substantial compliance standard in R.C. § 4511.19(D)(4)(b), he argues that the amendment did not take effect until January 1, 2004, which was after his arrest. Alternatively, he asserts that if R.C. § 4511.19(D)(4)(b) was in effect at the time of his arrest, then "it is inherently unconstitutional" because it conflicts with Homan and, in so doing, violates Article IV, Section 5(B) of the Ohio Constitution, which authorizes the Ohio Supreme Court to "prescribe rules governing practice and procedure in all courts of the state[.]"
 {¶ 20} Upon review, we conclude that the trial court properly applied R.C. § 4511.19(D)(4)(b) and found substantial compliance to be adequate in the present case. The statutory language quoted above was added to R.C. § 4511.19 by Section 1 of Am. Sub. S.B. No. 163, which has an effective date of April 9, 2003. This fact has been recognized by our own court as well as other Ohio appellate districts. See, e.g., State v. Mahaffey, Greene App. No. 2003 CA 56, 2004-Ohio-1023, at ¶ 13 n. 1; State v. Babel,
Butler App. No. CA2003-09-245, 2004-Ohio-4151, at ¶ 6 n. 2;State v. Phipps, Auglaize App. No. 2-03-39, 2004-Ohio-4400, at ¶ 1; see also Painter, Ohio Driving Under the Influence Law (2004 Ed.) 161, § 8:49. Because the effective date of R.C. §4511.19(D)(4)(b) preceded Faul's arrest, we reject his argument that the trial court should have required strict compliance underHoman, supra.
 {¶ 21} As for Faul's contention that R.C. § 4511.19(D)(4)(b) is unconstitutional, we note that the Third District recently rejected an identical argument in Phipps, supra. More importantly, we also note that Faul did not raise his constitutional argument in the trial court. The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986),22 Ohio St.3d 120 at the syllabus. We retain the discretion, of course, to consider a waived constitutional argument under a plainerror analysis. In re M.D. (1988), 38 Ohio St.3d 149, 151. But we find no plain error here. An error qualifies as "plain error" only if it is obvious and but for the error the outcome of the proceeding clearly would have been otherwise. State v. Macias,
Darke App. No. 1562, 2003-Ohio-1565, citing State v. Yarbrough,95 Ohio St.3d 227, 245, 2002-Ohio-2126. In the present case, the trial court committed no plain error in relying on R.C. §4511.19(D)(4)(b), as the statute is not obviously invalid. SeeAwan, supra, at 124 (Celebrezze, C.J., concurring). Accordingly, we overrule Faul's first assignment of error.
 {¶ 22} In his second assignment of error, Faul claims the trial court erred in failing to suppress evidence of field sobriety tests not recognized by NHTSA. This assignment of error relates to his performance on the alphabet test and the fingerdexterity test. Faul contends that NHTSA recommends using these tests only to determine whether to remove a DUI suspect from his vehicle for further evaluation but not to establish probable cause to arrest. Based on the premise that these tests are not recognized by NHTSA as true sobriety tests, Faul asserts that the trial court should have suppressed evidence concerning them.
 {¶ 23} We are unpersuaded by Faul's argument. As an initial matter, we note that he relies on the contents of a NHTSA student manual that does not appear to have been before the trial court. We need not reject Faul's argument on that basis, however, because the portions of the manual he cites in no way establish error in the trial court's ruling. Although the NHTSA manual states that the alphabet and finger-dexterity tests may be given while a suspect remains inside his vehicle, it recognizes that they "are often administered outside the vehicle." See NHTSA student manual at § VI-5. Thus, we do not agree with Faul's claim that the NHTSA manual authorizes the tests only for purposes of deciding whether to remove a suspect from his vehicle. To the contrary, the manual expressly recognizes that the results of the alphabet and finger-dexterity tests should be considered by an officer, along with all other available information, to determine whether probable cause to arrest exists. Id. at § VII-1 and § VII-2. Moreover, in State v. Rajchel, Montgomery App. No. 19633, 2003-Ohio-3975, we recognized that a suspect's performance on the alphabet test and the finger-dexterity test may be considered under a totality-ofthe-circumstances analysis to establish probable cause to arrest a suspect for driving under the influence of alcohol. Id. at ¶ 20. Other courts have reached the same conclusion. See, e.g, State v. Menking, Washington App. No. 02CA66, 2003-Ohio-3515.
 {¶ 24} In the present case, the alphabet test consisted of nothing more than Faul reciting the alphabet from A through Z. The finger-dexterity test consisted of him touching each finger on one hand to the thumb on the same hand and counting one through four. His performance of these basic tasks was relevant to the arresting officer's probable cause determination, along with the officer's observation of Faul's impaired driving, his swaying while walking, his markedly slurred speech, his strong odor of beer, and his admission that he had been drinking.[3] As a result, we overrule Faul's second assignment of error.
 {¶ 25} In his third assignment of error, Faul contends the trial court erred by ruling that a videotape of his performance on the field sobriety tests could be shown to jurors and that Cole could testify about his observations during the tests.[4] In support, Faul argues only that this evidence may not be admitted at trial because the tests were not performed in strict compliance with NHTSA standards.
 {¶ 26} We find Faul's argument to be without merit. As we explained in our analysis of his first assignment of error, only substantial compliance was required in the present case. Notably absent from Faul's appellate brief or defense counsel's argument at trial is a claim that Cole failed to demonstrate substantial compliance with applicable testing standards. Moreover, the Ohio Supreme Court has recognized that an officer may testify regarding his personal observations made during field sobriety tests even if applicable testing standards have not been satisfied. Schmitt, supra, at 83 ("The nonscientific field sobriety tests involve simple exercises, such as walking heel-to-toe in a straight line * * *. The manner in which a defendant performs these tests may easily reveal to the average layperson whether the individual is intoxicated. We see no reason to treat an officer's testimony regarding the defendant's performance on a nonscientific field sobriety test any differently from his testimony addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol. In all of these cases, the officer is testifying about his perceptions of the witness, and such testimony helps resolve the issue of whether the defendant was driving while intoxicated."). Accordingly, we overrule Faul's third assignment of error.
 III. Conclusion {¶ 27} Having overruled Faul's three assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Grady, J., and Young, J., concur.
[1] The offense was a fourth-degree felony due to Faul's three prior convictions within six years.
[2] We note that Faul did not undergo a "one-leg balance test," notwithstanding the reference to it by the trial court and by Faul in his appellate brief. Instead of a one-leg balance test, the videotape of Faul's testing reveals that Cole had him stand with his hands at his side, his feet at a forty-five degree angle, with his head back and his eyes closed, for thirty seconds.
[3] Parenthetically, we note Cole's testimony at the suppression hearing that Faul recited the alphabet correctly and performed the finger-dexterity test with little trouble. In light of this testimony, we would find no prejudice to Faul even if the trial court's ruling as to these tests were erroneous.
[4] This assignment presumably concerns only the alphabet, finger-dexterity, and heel-to-toe walking tests because the trial court sustained Faul's motion to suppress as to all other tests.