[Cite as *State v. Hido*, 2011-Ohio-2560.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :    C.A. CASE NO. 10CA0046

vs.                              :    T.C. CASE NO. 09TRC10960
                                               09CRB04379

STACY HIDO                       :

    Defendant-Appellant          :

            . . . . . . . . .

## O P I N I O N

Rendered on the 27th day of May, 2011.

            . . . . . . . . .

Michael F. Sheils, Chief City Prosecutor, Atty. Reg. No.0021678,
50 East Columbia Street, Springfield, OH 45502
    Attorney for Plaintiff-Appellee

Charles M. Rowland, II, Atty. Reg. No.0065603, 2190 Gateway Drive,
Fairborn, OH 45324
    Attorney for Defendant-Appellant

            . . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Stacy Hido, appeals from her conviction and sentence for operating a motor vehicle while under the influence of alcohol (OVI).

{¶ 2} On September 6, 2009, at 10:10 a.m., an Ohio Highway Patrol air patrol unit clocked Defendant's vehicle at 85 m.p.h.

in a 65 m.p.h. zone, Westbound on I-70 just East of State Route 54. Sergeant Bush, who was in a marked cruiser and working with the air patrol unit, stopped Defendant's vehicle. Before Defendant pulled over to the side of the road and stopped, Sergeant Bush observed her trying to stuff something underneath the vehicle's front seat.

{¶ 3} When Sergeant Bush made contact with Defendant, the driver and sole occupant of the vehicle, she admitted that her driver's license had expired. After Defendant rolled down her window, Sergeant Bush smelled a strong odor of alcohol. Defendant's eyes were glassy and bloodshot, and she was very nervous. When asked by Sergeant Bush, Defendant denied drinking any alcoholic beverages. Defendant stated that her step-father had spilled beer on her.

{¶ 4} Sergeant Bush asked Defendant for identification but she had none. Sergeant Bush then asked Defendant to sit in the front passenger seat of his cruiser so that he could obtain information to identify her. While Defendant was sitting in Sergeant Bush's cruiser, he noticed that a very strong odor of alcohol came from Defendant's breath.

{¶ 5} Sergeant Bush asked Defendant to perform three field sobriety tests. The first test was the horizontal gaze nystagmus (HGN) test. Sergeant Bush observed six out of six possible clues.

The next test was the walk and turn test. Defendant started before the instructions were completed, and she raised her arms for balance. The final test was the one leg stand test. Defendant raised her arms for balance and put her foot down at the count of seventeen. Defendant's having failed all three field sobriety tests, Sergeant Bush arrested Defendant for OVI.

{¶ 6} Another trooper, who had stopped to assist, discovered an open container of beer underneath the front seat of Defendant's vehicle. Defendant was transported to the Springfield Highway Patrol post where she was given a breath test that produced a result of .117, well over the legal limit.

{¶ 7} Defendant was charged in Clark County Municipal Court with speeding, R.C. 4511.21, driving on an expired license, R.C. 4510.12, and operating a motor vehicle with a prohibited breath alcohol concentration, R.C. 4511.19(A)(1)(d). Defendant filed a motion to suppress the evidence, including the results of the field sobriety tests, the Breathalyzer test, and the observations and opinions of Sergeant Bush. A hearing was held on the motion. The trial court overruled Defendant's motion to suppress evidence.

{¶ 8} Defendant entered a plea of no contest to the OVI charge and was found guilty by the court. In exchange, the State dismissed the other pending charges. The trial court sentenced Defendant

to ninety days in jail with eighty days suspended, a six hundred and fifty dollar fine, and a two year driver's license suspension. Defendant was also placed on six months probation and ordered to complete an alcohol abuse assessment and treatment. Defendant filed a notice of appeal from her judgment of conviction. The trial court stayed execution of Defendant's sentence pending this appeal.

## FIRST ASSIGNMENT OF ERROR

"THE STATE FAILED TO SHOW PROBABLE CAUSE FOR THE ARREST AND THE EVIDENCE SHOULD BE SUPPRESSED."

{¶ 9} Defendant does not contest that her initial stop for speeding was lawful. *Dayton v. Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431. Rather, Defendant claims that her arrest lacked probable cause because police lacked a reasonable, articulable suspicion that she was operating her vehicle while under the influence of alcohol, which was necessary to justify her continued detention for further investigation through field sobriety tests. *State v. Evans* (1998), 127 Ohio App.3d 56. Defendant argues that the evidence merely demonstrates that Defendant had consumed alcohol, not that she was impaired. *State v. Knox*, Greene App. No. 2005CA74, 2006-Ohio-3039. We disagree.

{¶ 10} Defendant relies upon prior decisions of this court holding that an odor of alcohol, or a slight or unspecified odor

of alcohol, coupled with a de minimus traffic violation, glassy bloodshot eyes, and an admission to having consumed one or two beers, was insufficient to create a reasonable suspicion of driving under the influence and justify further detention in order to conduct field sobriety tests. *State v. Spillers* (Mar. 24, 2000), Darke App. No. 1504; *State v. Dixon* (Dec. 1, 2000), Greene App. No. 2000-CA-30; *State v. Swartz*, Miami App. No. 2008CA31, 2009-Ohio-902. This court has, however, repeatedly held that a strong odor of alcohol alone may be sufficient to provide an officer with reasonable suspicion of criminal behavior. See: *State v. Marshall,* Clark App. No. 2001CA35, 2001-Ohio-7081 (and the cases cited therein).

{¶ 11} Defendant was stopped for going 85 m.p.h. in a 65 m.p.h. zone. This is not a situation involving "nominal" speeding, but rather one involving excessive speeding, which we have held is some evidence of impairment. *State v. Syx*, Montgomery App. No. 23589, 2010-Ohio-5880; *State v. Gower*, Darke App. No. 1616, 2003-Ohio-5403. When Sergeant Bush made contact with Defendant, he smelled a strong odor of alcohol coming from Defendant's breath and noticed that Defendant's eyes were glassy and bloodshot and that she was very nervous. Simply put, these facts are sufficient to give rise to a reasonable suspicion of impairment that justified Defendant's detention to conduct field sobriety tests.

Furthermore, after Defendant failed all three field sobriety tests, police had sufficient probable cause to arrest Defendant for OVI.

{¶ 12} Defendant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

"THE STATE FAILED TO MOVE INTO EVIDENCE ANY STANDARDS BY WHICH THE COURT COULD FIND SUBSTANTIAL COMPLIANCE FOR CONDUCTING STANDARDIZED FIELD SOBRIETY TESTS."

{¶ 13} Defendant argues that because the three field sobriety tests Sergeant Bush administered were not shown to have been conducted in substantial compliance with National Highway Traffic Safety Administration (NHTSA) standards, the results of those tests were inadmissible, and without those test results Sergeant Bush lacked probable cause to arrest Defendant for OVI.

{¶ 14} In *State v. Reed*, Montgomery App. No. 23357, 2010-Ohio-299, at ¶53, this court observed:

{¶ 15} "The results of field sobriety tests are admissible at trial if the State presents clear and convincing evidence that the officer administered the tests in substantial compliance with National Highway Traffic Safety Administration ('NHTSA') standards. R.C. 4511.19(D)(4)(b); *State v. Schmitt,* 101 Ohio St.3d 79, 801 N.E.2d 446, 2004-Ohio-37; *State v. Davis,* Clark App. No.2008-CA-65, 2009-Ohio-3759. The State can satisfy its burden without explicit testimony from the officer that he or she

substantially complied with NHTSA standards in administering the tests. *Davis.* Neither is the State required to actually introduce the NHTSA manual or testimony concerning the standards, where the record demonstrates, if only by inference, that the court took judicial notice of the NHTSA standards. *State v. Knox,* Greene App. No.2005-CA-74, 2006-Ohio-3039." That is the case here.

{¶ 16} Evidence that the pertinent rules and regulations have been followed in conducting field sobriety tests, if unchallenged, constitutes a sufficient foundation for admission of the test results. *State v. Murray*, Greene App. No. 2002-CA-10, 2002-Ohio-4809. Only when a defendant sufficiently challenges the evidence would the State then need to present more evidence of more specific compliance. *Id.* For example, testimony by the officer that he or she had been trained to perform the horizontal gaze nystagmus (HGN) test, the walk and turn test, and the one-leg stand test under NHTSA standards, and that the tests were performed in the manner in which the officer had been trained, would suffice for admission of the field sobriety test results, absent a challenge to some specific way the officer failed to comply with NHTSA standards. *Murray; Knox.*

{¶ 17} Defendant points to several matters in the NHTSA manual that Sergeant Bush did not remember, most of which have nothing to do with the administration of field sobriety tests. Further,

Defendant fails to specify in his brief the specific way in which Sergeant Bush's administration of the three field sobriety tests failed to comply with the requirements in the NHTSA manual for administering those tests.

{¶ 18} A review of Sergeant Bush's testimony, particularly his cross-examination, not surprisingly discloses that he has not committed every detail in the NHTSA manual to memory, nor was his administration of the three field sobriety tests in this case in strict compliance with every detail in the NHTSA manual. Strict compliance is not the standard, however. Substantial compliance is sufficient. R.C. 4511.19(D)(4)(b); *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251. We agree with the trial court that Sergeant Bush's testimony, taken as a whole, satisfy the substantial compliance requirement.

{¶ 19} Sergeant Bush testified that he is trained to use standardized field sobriety tests, including the HGN test, the walk and turn test and the one leg stand test, that conform to NHTSA standards. He explained how to conduct the horizontal gaze nystagmus (HGN) and walk and turn tests. The parties stipulated that Sergeant Bush is familiar with the walk and turn and one leg stand tests in the NHTSA manual. Sergeant Bush testified that he performed the field sobriety tests in this case as he was trained to do. That evidence is sufficient to demonstrate substantial

compliance with NHTSA standards for the field sobriety tests, absent a challenge to some specific way Sergeant Bush failed to comply with NHTSA standards in administering those tests.

{¶ 20} Defendant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

"THE DEFENDANT WAS PLACED IN CUSTODY WHEN SHE WAS SUBJECTED TO FIELD SOBRIETY TESTS IN THE TROOPERS CRUISER AND WAS REMOVED TO A DIFFERENT LOCATION FOR COMPLETION OF THE STANDARDIZED FIELD SOBRIETY TESTS."

{¶ 21} After being stopped for speeding and having failed to produce a driver's license or any other form of identification, Defendant was asked to sit in the front passenger seat of Sergeant Bush's cruiser while he gathered information to verify Defendant's identity. The first field sobriety test, the horizontal gaze nystagmus (HGN) test, was performed inside Sergeant Bush's cruiser. Defendant argues that there was no legal justification to have her sit in Sergeant Bush's cruiser, which resulted in an illegal detention/arrest.

{¶ 22} We have previously held that a police officer may ask traffic offenders who are not carrying their driver's license or any other form of identification to sit in a police cruiser while the officer verifies the person's identity. *State v. Fritz*, Montgomery App. No. 23054, 2009-Ohio-6690; *State v. Dozier*,

Montgomery App. NO. 23841, 2010-Ohio-2918. Before putting the person into the police cruiser, the officer may not lawfully perform a weapons patdown if the only reason for putting the person in the cruiser is for the officer's convenience as he verifies the person's identity. *Id.* In the present case no pat-down was performed.

{¶ 23} Having Defendant sit in the front seat of Sergeant Bush's cruiser while he verified Defendant's identity and administered the horizontal gaze nystagmus test did not convert an investigative detention into a full blown arrest. An arrest, which must be supported by probable cause to be valid, is characterized by four elements: (1) an intent to arrest; (2) under real or pretended authority; (3) accompanied by actual or constructive seizure or detention; (4) which is so understood by the person arrested. *State v. Barker* (1978), 53 Ohio St.2d 135, 139. On the totality of the facts and circumstances in this case, it is clear that Sergeant Bush had no intent to arrest Defendant until after she failed all three field sobriety tests. By that time, Sergeant Bush clearly had probable cause to arrest Defendant for OVI.

{¶ 24} Defendant's third assignment of error is overruled. The judgment of the trial court will be affirmed.

FROELICH, J. And HALL, J., concur.

Copies mailed to:

Michael F. Sheils, Esq.
Charles M. Rowland, II, Esq.
Hon. Thomas E. Trempe